UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Michael S.,[1]

  Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

  Defendant.

23-CV-6365-LJV
DECISION & ORDER

---

  On June 28, 2023, the plaintiff, Michael S. ("Michael"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2]  *Id.*  On September 25, 2023, Michael moved for judgment on the pleadings, Docket Item 7; on October 4, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 8; and on October 18, 2023, Michael replied, Docket Item 9.

---

  [1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

  [2] Michael applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).

For the reasons that follow, this Court denies Michael's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

2

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. THE ALJ'S DECISION

On February 28, 2022, the ALJ found that Michael's "disability ended on May 31, 2018, and [he] has not become disabled again since that date." *See* Docket Item 6 at 18. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.*

The ALJ first found that step one did not apply but that Michael "was notified that he was no longer disabled as of May 31, 2018, based on a redetermination of disability under the rules for adults who file new applications." *Id.* at 18-19. At step two, the ALJ found that "[s]ince May 31, 2018," Michael has suffered from four severe, medically determinable impairments: "asthma, depressive disorder, posttraumatic stress disorder (PTSD), and history of learning disorder." *Id.* at 19.

At step three, the ALJ found that Michael's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 19-22. More specifically, the ALJ found that Michael's physical impairments did not meet or medically equal listing 3.03 (asthma), *id.* at 19, and that Michael's mental impairments did not meet or medically

3

equal listings 12.04 (depressive, bipolar, or related disorders), 12.05 (intellectual disorder), and 12.15 (trauma and stressor-related disorders), *id.* at 20.  In assessing Michael's mental impairments, the ALJ found that Michael was: (1) moderately impaired in understanding, remembering, or applying information; (2) mildly impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) mildly impaired in adapting or managing oneself.  *Id.*

The ALJ then found that Michael had the residual functional capacity ("RFC")[4] to "perform a full range of work at all exertional levels" except that:

> [Michael] can tolerate occasional exposure to extreme cold, extreme heat, wetness, humidity, and concentrated dust, vapors, gasses, and airborne irritants.  He cannot interact with the public or perform tandem or teamwork.  He can perform simple, rote, unskilled tasks, adjust to occasional changes in the work setting, and make occasional simple work-related decisions.  He can fulfill daily quotas or expectations, but cannot maintain fast-paced, automated, production line pace.  He can focus for two-hour periods with momentary lapses in attention that do not exceed two minutes per period.

*Id.* at 22.

At step four, the ALJ found that Michael had no past relevant work.  *Id.* at 27.  But given Michael's age, education, and RFC, the ALJ found at step five that Michael could perform substantial gainful activity as a routing clerk, mail clerk, or office helper.  *Id.* at 27-28; *see Dictionary of Occupational Titles* 222.687-022, 1991 WL 672133 (Jan. 1, 2016); *id.* at 209.687-026, 1991 WL 671813 (Jan. 1, 2016); *id.* at 239.567-010, 1991

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

WL 672232 (Jan. 1, 2016).  Therefore, the ALJ found that Michael's "disability ended on May 31, 2018, and [that he] has not become disabled again since th[en]."  Docket Item 6 at 28-29.

## II.    ALLEGATIONS

Michael argues that the ALJ erred in four ways.  Docket Item 7-1 at 1.  First, he argues that the ALJ improperly evaluated the opinion of a Licensed Creative Arts Therapist, Ethan Cullinan.  *Id.* at 13-14.  Second, he argues that the ALJ's "highly specific off-task finding" was not supported by substantial evidence.  *Id.* at 17-19.  Third, he argues that the ALJ failed to address the consistency factor in evaluating the opinion evidence.  *Id.* at 14-17.  Finally, he argues that the ALJ should have considered his educational records in determining his limitations.  *Id.* at 19-22.  For the reasons that follow, this Court disagrees.

## III.   ANALYSIS

### A.  LCAT CULLINAN'S OPINION

On July 30, 2021, LCAT Cullinan completed a "treating medical source statement (mental)" addressing Michael's abilities and aptitude.  *See* Docket Item 6-1 at 408-13 (capitalization omitted).  Cullinan noted that he had met with Michael every two weeks for the past three months, *id.* at 408, and he opined that Michael's difficulties in (1) maintaining attention for two-hour segments, (2) performing at a consistent pace without an unreasonable number and length of rest periods, (3) interacting with the public, (4) traveling to unfamiliar places or using public transportation, and (5) dealing with work-related stress would preclude Michael's performance only "for less than 10% of an 8-

5

hour workday," *id.* at 410-11.[5]  Along the same lines, he opined that Michael's difficulties in (1) maintaining regular attendance and being punctual within customary, usually strict tolerances, (2) working in coordination with or near others without being unduly distracted, and (3) completing a normal workday and workweek without interruptions from psychologically based symptoms would preclude Michael's performance only for "11% to 20% of an 8-hour workday." *Id.*[6]  Cullinan also found that Michael would be off-task 5% of the time or less during a normal workday, *id.* at 411, and that Michael's "treatment sessions" would cause him to be absent from work about two days each month, *id.*

The ALJ found LCAT Cullinan's opinion to be largely persuasive.  Docket Item 6 at 25.  The ALJ noted that the opinion is consistent with "multiple statements throughout the record that [Michael's] medications were effective" as well as with Michael's ability to "dress, cook, clean, shop, drive, and play video games."  *Id.* (citing Docket Item 6 at 57-60, Docket Item 6-1 at 310, 316).  The ALJ also found that Cullinan's treatment notes supported his opinion because "they contain unremarkable mental status examination results, with some reports of insomnia and hypervigilance."  *Id.* (citing Docket Item 6-1 at 366-67, 369-70, 373-74).  But the ALJ found that Cullinan's opinion that Michael would be absent about two days per month to attend treatment sessions was unsupported because there was no evidence suggesting that his medical appointments could not be adjusted to fit his work schedule.  *Id.*  In other words, the ALJ found that if

---

[5] The ALJ referred to these limitations as "mild limitations."  Docket Item 6 at 25.

[6] The ALJ referred to these limitations as "moderate limitations."  Docket Item 6 at 25.

Michael needed treatment twice a month, that treatment could be scheduled for times when Michael was not working.[7]

Michael first argues that the ALJ erred in his "characterization of 'mild' or 'moderate' as describing a limitation in a fundamental area of functioning that is limited 11-20% of the workday."  Docket Item 7-1 at 13-14.  This Court disagrees.

Under the regulations, a claimant has "moderate" limitations when his or her "functioning . . . independently, appropriately, effectively, and on a sustained basis is fair."  20 C.F.R. Pt 404, Subpt P, App'x 1, 12.00(F)(2).  Courts in this Circuit repeatedly have held that it is within the province of the ALJ to define the term "moderate."  *See, e.g.*, *Castro v. Berryhill*, 2018 WL 3756660, at *4 (W.D.N.Y. Aug. 7, 2018) ("[E]ven assuming arguendo that [p]laintiff's interpretation of the transcript were correct, it is within the ALJ's discretion to define the term 'moderate' when developing the RFC assessment." (emphasis omitted));  *Huber v. Berryhill*, 2017 WL 3267572, at *5 (W.D.N.Y. Aug. 1, 2017) ("[T]he ALJ was entitled to define the term "moderate" in his RFC assessment and in the hypothetical question posed to the [vocational expert].");  *Reynolds v. Colvin*, 2014 WL 4184729, at *5 (N.D.N.Y. Aug. 21, 2014) ("[I]f it is possible to match terms like 'mild,' 'moderate,' and 'marked,' with discrete percentages of time that individuals likely cannot meet mental demands of work, that prerogative lies exclusively with the Commissioner . . ., not a reviewing court.").  And it certainly was not

---

[7] Cullinan also opined that Michael could not "engage in full-time competitive employment" because it was "difficult to be around people [and] social settings [sic]" due to his anxiety and PTSD.  *See* Docket Item 6-1 at 408.  But that opinion—that Michael is unable to work—is the ultimate issue reserved to the Commissioner.  *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003).  And the ALJ accounted for Michael's issues in social settings and being around others by limiting him to jobs that did not involve interaction with the public, tandem work, or teamwork.  *See* Docket Item 6 at 22.

unreasonable for the ALJ to find less-than-10% limitations to be "mild" and 11-to-20% limitations to be "moderate."

What is more, regardless of the ALJ's terminology, "the relevant inquiry is whether the ALJ in fact incorporate[d] or account[ed] in the RFC for the limitations assessed by the medical professional . . .." *Christopher H. v. Comm'r of Soc. Sec.*, 2022 WL 282813, at *4 n.3 (W.D.N.Y. Jan. 31, 2022).  And here he did just that.

More specifically, the ALJ limited Michael to jobs that required no interaction with the public, tandem work, or teamwork, accounting for Cullinan's opinion that Michael had limitations in interacting appropriately with the general public and working with or near others without being unduly distracted.  *Compare* Docket Item 6 at 22 (ALJ's RFC), *with* Docket Item 6-1 at 410-11 (LCAT Cullinan's findings).  Likewise, the ALJ limited Michael to performing simple, rote, unskilled tasks with no automated or production line pace, thus accounting for Cullinan's opinion that Michael had issues dealing with normal work-related stress for a small part—less than 10%—of the workday.  Docket Item 6-1 at 410.  And those same limitations accounted for Cullinan's opinion that Michael would have issues from 11% to 20% of the time with respect to completing a normal workday and workweek and maintaining attendance.  *Id.*; *see, e.g.*, *Shannon v. Berryhill*, 2018 WL 6592181, at *3 (W.D.N.Y. Dec. 13, 2018) (noting there is significant case law indicating that an ALJ's restriction to simple, routine tasks accounts for limitations performing activities within a schedule and maintaining regular attendance); *Lori M. v. Comm'r of Soc. Sec.*, 2020 WL 7382128, at *5 (W.D.N.Y. Dec. 16, 2020) ("Limitations to simple, unskilled work at a non-production pace adequately account for up to moderate limitations in an ability to deal with stress.").

In sum, the ALJ correctly evaluated LCAT Cullinan's opinion, accounted in the RFC for most of the limitations in that opinion, and explained why he did not accept other limitations. Because that is exactly what the ALJ is supposed to do, Michael's argument lacks merit.

### B. ALJ'S OFF-TASK LIMITATION

If an ALJ includes a "highly[ ]specific" limitation in a claimant's RFC, that limitation cannot come from whole cloth. *See Tomicki v. Berryhill*, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018). In other words, when the medical evidence and opinions suggest certain specific limitations, the ALJ cannot make up less-restrictive specific limitations. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). So when the medical evidence suggests a specific amount of time that a claimant will be off task and there is no medical evidence suggesting a different specific time, a finding that a claimant will be off task for a specific time less than that is not supported by substantial evidence. *Cf. Tomicki*, 2018 WL 703118, at *5 ("[T]he record does not support the ALJ's conclusion that [the claimant] needs to briefly switch between sitting and standing only every thirty minutes. The ALJ did not cite any evidence to support this highly[ ]specific sit-stand option . . .. Moreover, there is evidence in the record indicating that [the claimant] needs to change positions every few minutes, not every thirty minutes.").

But just because an ALJ includes a specific limitation with a percentage, range, or other descriptor in the RFC does not mean that the limitation is unsupported by substantial evidence. *See Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) ("The fact that the ALJ assigned a particular percentage range (0-10%) to illustrate [a claimant's] limitation does not undermine the fact that the ALJ's finding was supported

9

by substantial evidence."). The question is whether there was evidence in the record supporting the ALJ's specific finding—here, for example, that Michael could "focus for two-hour periods with momentary lapses in attention that do not exceed two minutes per period." Docket Item 6 at 22. And a specific finding often is supported by "[a] medical opinion, a claimant's testimony, or information contained in the medical records . . .." *Michelle D. v. Comm'r of Soc. Sec.*, 2024 WL 108685, at *5 (W.D.N.Y. Jan. 10, 2024). In fact, that was the case here.

The specific limitation here was rooted in Cullinan's opinion that Michael's difficulty in maintaining attention for two-hour segments precluded his performance for less than 10% of an 8-hour workday. Docket Item 6-1 at 410. In fact, the limitation in the RFC is consistent with Cullinan's less-than-10% finding and was a fair translation of how that finding might affect Michael's work. *Cf. Buscemi v. Colvin*, 2014 WL 4772567, at *14 (W.D.N.Y. Sep. 24, 2014) (ALJ adequately accounted for attention and concentration limitations in the RFC assessment "by incorporating the limitation that [claimant] could only sustain attention and concentration for up to two hours at a time").

In addition, at least one examining provider, Todd Deneen, Psy.D., opined that Michael had only a mild limitation "sustaining concentration" and that Michael's limitations "do[] not appear to be significant enough to interfere with [his] ability to function on daily basis." Docket Item 6-1 at 256. The ALJ found parts of Dr. Deneen's opinion to be unpersuasive because Michael was more limited than Dr. Deneen opined. Docket item 6 at 26. And while that opinion did not suggest that Michael would have any lapses in attention, the ALJ's finding that Michael would have lapses in attention of about a minute each hour simply gave Michael the benefit of the doubt. *See Ramsey v.*

*Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (finding an ALJ's deviation "from consultative examiners' recommendations to *decrease* [a claimant's] RFC based on other evidence in the record" was not error (emphasis in original)); *Shauna N.B. v. Comm'r of Soc. Sec.*, 2025 WL 961466 (W.D.N.Y. Mar. 31, 2025) ("[T]he ALJ's decision to impose more severe limitations . . . is not a basis for remand."); *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp.3d 639, 649 (W.D.N.Y. 2020) (finding "[t]he fact that the ALJ afforded Plaintiff the benefit of the doubt" and included additional limitations in the RFC "is not grounds for remand").

In other words, it was permissible for the ALJ to choose a period of less than 10%—grounded in Cullinan's opinion—as the time that Michael may be unable to pay attention. And because Dr. Deneen did not include any lapses in attention in his opinion, the ALJ was free to choose a specific period between zero and 10%. Thus, in contrast to cases where a specific limitation was based on an ALJ's own surmise or fashioned from whole cloth, *see, e.g.*, *Tara W. v. Comm'r of Soc. Sec.*, 2021 WL 4316824, at *3-4 (W.D.N.Y. Sep. 23, 2021), the ALJ's limitation here was grounded in the record. And even if that were not so, the specific limitation was more favorable to Michael than the opinion of at least one provider and therefore was not error.[8] Michael's second argument therefore lacks merit as well.

---

[8] Notably, even if the ALJ erred, any such error was harmless. At the August 2021 hearing, the vocational expert testified that the ALJ's specific limitation "would be less than 10% off task time, which means that [Michael] would be able to . . . perform the jobs that [were] given." Docket Item 6 at 85. So an RFC anywhere in the range of Cullinan's opinion—less than 10% off task time—would not change the vocational expert's analysis. *See Tara W.*, 2021 WL 4316824, at *4 (finding an error was not harmless where it would alter a vocational expert's analysis).

11

**C. ALJ'S CONSIDERATION OF THE CONSISTENCY FACTOR**

Because Michael turned eighteen after March 27, 2017, the ALJ evaluated the medical opinion evidence under the framework in 20 C.F.R. § 416.920c. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017).[9]  Under those new regulations, the ALJ will consider opinions from a claimant's medical sources but "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[s]."  20 C.F.R. § 416.920c(a).  Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions" in light of the regulatory factors. *Id.* § 416.920c(b), (c)(1)-(5).

Under 20 C.F.R. § 404.1520c, the ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative findings. *See* 20 C.F.R. § 404.1520c(a)-(c).  Those regulatory factors include (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own), (4) specialization, (5) other factors. *Id.* § 404.1520c(c).  An ALJ must address the first two factors—supportability and consistency—in evaluating a medical opinion but need not explicitly analyze the remaining three. *Id.* § 404.1520c(b).  Moreover, "if a searching review of the record assures [the court] that the substance of the [regulation] was not traversed, the court may affirm the Commissioner's decision."  *David C. v. Comm'r of*

---

[9] 20 C.F.R. § 416.987 governs disability redeterminations for individuals who attain age 18.  "An individual who receives [disability] as a child must, upon attaining age 18, have his or her disability redetermined." *Gainous v. Comm'r of Soc. Sec.*, 2021 WL 4847071, at *1 n.1 (S.D.N.Y. Oct. 18, 2021) (citing 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R. § 416.987).  Per 20 C.F.R. § 416.987(b), "the now-adult claimant is considered to have effectively filed a new application for benefits when turning 18." *Calob R. v. Bisignano*, 2025 WL 1899103, at *4 (E.D. Wash. Jul. 9, 2015).

*Soc. Sec.*, 2024 WL 4347151, at *16 (W.D.N.Y. Sep. 30, 2024) (internal citations and quotations omitted).

"Supportability" and "consistency" are terms of art defined by the regulations. As to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); *see Spottswood v. Kijakazi*, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024) (characterizing "supportability" as "how well supported an opinion is by medical evidence and the explanations given in the opinion"). As to "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *see Spottswood*, 2024 WL 89635, at *1 (characterizing "consistency" as "how consistent an opinion is with other evidence in the record"). So supportability looks at the opinion in light of the provider's own records and findings; consistency looks at the opinion in light of the rest of the record.

Michael argues that the ALJ never "mentioned [the] consistency among the opinions at all" and instead "merely talked about h[is] conclusions as to whether the opinions from the relevant time period were consistent with the 'overall record.'" Docket Item 7-1 at 16. In other words, Michael says that the ALJ erred by "neglecting to acknowledge the consistencies between the opinions." *Id.* This Court disagrees.

Contrary to Michael's suggestion, an ALJ need not address the consistency or inconsistency between every medical opinion and every other medical opinion; instead, the regulations require only that the ALJ address the consistency of the opinions with the rest of the record.  *See Rushford v. Kijakazi*, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) ("As required, the ALJ addressed each opinion in turn, explaining why—or why not—he found each opinion to be 'supported' by the record and 'consistent' with the other evidence."); *David C. v. Comm'r of Soc. Sec.*, 2024 WL 376598, at *4 (W.D.N.Y. Feb. 1, 2024) ("Notwithstanding the ALJ's apparent reference to the consistency between the opinions . . ., he was not required to specifically assess the consistency between their opinions as long as he considered their consistency with the record as a whole."); *Darla W. v. Comm'r of Soc. Sec.*, 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) ("The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with all medical and nonmedical evidence in a claim.").  And the ALJ did exactly that.

For example, in finding that a portion of the primary source statement of Ellerie Chen, M.D., was not persuasive, the ALJ noted that Dr Chen's findings were inconsistent with mental status examinations noting that Michael's "memory was intact, his concentration was normal, and his attention [w]as sustained."  Docket Item 6 at 25 (citing Docket Item 6-1 at 232-33, 369-70, 373-74).  Likewise, in discussing Dr. Deneen's evaluations, the ALJ noted that "the overall evidence of record, including [Michael's] intellectual testing, his school records, and reports of difficulty with focus and concentration, supports a finding that [Michael's] impairments are more than minimal,

14

and cause some moderate limitations." *Id.* at 26.  And in evaluating the opinion of M. Juriga, a state agency medical consultant, the ALJ noted that it was "consistent with the overall evidence of record, including [Michael's] subjective symptoms and admitted daily functioning, largely unremarkable mental status examination results, and the opinion of [LCAT] Cullinan."  *Id.* (citing Docket Item 6 at 57-61, Docket Item 6-1 at 232-33, 369-70, 373-76, 408-13).  The ALJ thus not only explicitly addressed the consistency of the opinions with the rest of the medical record, but he also explained the reasons behind the conclusions he reached.

Michael says that the ALJ generally addressed only whether each opinion was "consistent with the 'overall record.'"  S*ee* Docket Item 7-1 at 16 (citing Docket Item 6 at 25-27).  And if that were all the ALJ did—if the ALJ simply had concluded without explanation that the opinions were consistent or inconsistent with the rest of the evidence—Michael's argument that the ALJ erred might have some merit.  *See David C.*, 2024 WL 4347151, at *16 n.14 ("The Second Circuit has indicated that an ALJ should provide some degree of explanation on these points beyond merely indicating, for example, that he or she finds that an opinion is, or is not, well supported or consistent with the record.") (citing *Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. 2022)).  But the ALJ did more than that here:  The ALJ detailed and explained his reasons for finding opinion evidence consistent or inconsistent with the other medical records.  *See, e.g.*, Docket Item 6 at 25 (finding LCAT Cullinan's opinion consistent with the evidence and citing the records with which it is consistent); *id.* at 25-26 (finding Dr. Chen's opinion inconsistent with the evidence and citing the records with which it is inconsistent).  Because the regulations require no more than that, the ALJ did not err.

15

### D. ALJ'S CONSIDERATION OF MICHAEL'S EDUCATIONAL RECORDS

Finally, Michael argues that the ALJ erred in not considering school records. See Docket Item 7-1 at 19-22. But he is incorrect both legally and factually.

The Social Security Administration has promulgated specific guidance with respect to the evaluation of disability in young adults, defined as those "between the ages of 18 [and] approximately 25." SSR 11-2p, 2011 WL 4055665, at *2 (Sep. 12, 2011). The same definition of disability, rules, and five-step sequential evaluation process apply to young adults and older adults. Id.; Coppola v. Berryhill, 2019 WL 1292848, at *20 (S.D.N.Y. Mar. 21, 2019) (collecting cases). But SSR 11-2p also recognizes that "evidence about a young adult's functioning from school programs, including IEP's[,] . . . may indicate how well a young adult can use his or her physical or mental abilities to perform work activities." 2011 WL 4055665, at *7. In other words, SSR 11-2p suggests "a wide variety of other sources that the ALJ may find helpful in evaluating a young adult's functional capacity," but it does not require the ALJ to evaluate "each source in every case." Natalie L. v. Comm'r of Soc. Sec., 2025 WL 957580, at *5 (W.D.N.Y. Mar. 31, 2025).

Michael's assertion that SSR 11-2p directs an ALJ to "consider [a claimant's] educational records" when determining a young adult's ability to function, see Docket Item 7-1 at 20, is therefore incorrect. Indeed, aside from noting that school-program evidence can aid in evaluating "the severity and impact" of an impairment, SSR 11-2P says only that evidence of school programs "may indicate how well a young adult can use his or her physical or mental abilities to perform work activities." 2011 WL 4055665, at *5, *7; see also Frankie M. v. Comm'r of Soc. Sec., 2022 WL 282814, at *4 (W.D.N.Y. Jan. 31, 2022) ("The regulations do not mandate that the ALJ even consider educational

16

records for a claimant of Frankie's age, much less adopt their conclusions.") (citing *Eckert v. Comm'r of Soc. Sec.*, 2019 WL 6307353, at *6 (E.D.N.Y. Nov. 25, 2019) ("While an ALJ may consider educational records, they are [sic] not required to.")).

But even if the ALJ were required to address Michael's educational records when evaluating his limitations, the ALJ in fact did that here. For example, in finding Michael to be moderately limited in understanding, remembering, or applying information, the ALJ observed that testing showed Michael to have "borderline" intelligence and to have been "in special education classes when in school." Docket Item 6 at 20. The ALJ later noted records showing that Michael "had an IEP and received special education services for learning disorder and ADHD[,] . . . had poor attendance at school and had to repeat 9th grade[,] . . . [but] was ultimately able to graduate in 2020." *Id.* at 24 (citing Docket Item 6 at 256-78, 326-67, 549-940, Docket Item 6-1 at 1-113). And the ALJ explicitly noted Michael's testimony that "he had special education classes as well as general population classes with assistance of a special education teacher." *Id.* at 23. So the argument that the ALJ erred by not considering education records is factually incorrect as well.

Michael asserts that the ALJ's discussion of educational records was limited to "acknowledg[ing]" that Michael had an IEP, received special education services for a learning disorder and ADHD, had poor attendance at school, and repeated the 9th grade. *See* Docket Item 7-1 at 19 (citing Docket item 6 at 24). But that is not correct. On the contrary, references to Michael's school records are sprinkled throughout the ALJ's decision, indicating that the ALJ indeed used those records to reach his conclusions. *See, e.g.*, Docket Item 6 at 20 (noting that Michael "was in special

17

education classes when in school"), 23 (recounting Michael's testimony about his school and special education classes), 26 (noting Michael's "intellectual testing" and "school records" as reasons for discounting part of Dr. Deneen's opinion), 27 (listing education as a consideration). So the ALJ undoubtedly factored Michael's school records into the equation even if he did not mention them in connection with each of his findings.

Michael also argues that the ALJ committed an error similar to the one requiring remand in *Samuel v. Comm'r of Soc. Sec.*, 2015 WL 5774850, at *14 n.16 (E.D.N.Y. Sep. 30, 2015). See Docket Item 7-1 at 21-22. But in *Samuel*, remand was required because "the ALJ failed to adequately ensure that Samuel was aware of his right to be represented by an attorney and that Samuel knowingly and voluntarily waived that right." 2015 WL 5774850, at *15. That error was particularly harmful given Samuel's "documented learning disorder and borderline intellectual functioning." *Id.* at *11. The court also noted that the ALJ's discussion "gave short shrift to Samuel's school records" and that "[o]n remand, the ALJ should consider these records in accordance with SSR 11-2P." *Id.* at *14 n.16 (citing 2011 WL 4055665, at *5-6). But "*Samuel* does not stand for the proposition that the ALJ must in every circumstance consider a young adult's school records." See *Natalie L. v. Comm'r of Soc. Sec.*, 2025 WL 957580, at *5 (W.D.N.Y. Mar. 31, 2025).[10]

---

[10] Indeed, in *Natalie L.* the court held that an ALJ need not explicitly discuss educational records, particularly "where those records were from outside the relevant time period and there was ample evidence from during the time period that the ALJ could consider." 2025 WL 957580, at *8.

In sum, the ALJ did not err by failing to address Michael's school records. On the contrary, the ALJ addressed those records and the RFC accounted for Michael's memory and learning difficulties.

## **CONCLUSION**

Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta,* 508 F. App'x at 56, and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence, and this Court will not second guess it. Therefore, and for the reasons stated above, Michael's motion for judgment on the pleadings, Docket Item 7, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 8, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:   October 20, 2025
         Buffalo, New York

                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE